THE BOARD OF COMMISSIONERS OF MATAWAN v. JAMES B
HORNER, COLLECTOR.

1. The act for the formation of borough commissions, approved March
7th, 1882, (*Pamph. L.*, p. 48,) is constitutional in its general applica-
tion to all the townships of the state.

2. Where, prior to the incorporation of part of a township under this act,
overseers of highways have been assigned their several limits, and the
money voted to be raised by taxation for roads has been appropriated
to the respective road districts, such appropriation cannot be changed
by the subsequent incorporation of borough commissions.

On motion for *mandamus* to pay part of taxes collected for
roads in Matawan township to the relators.

Argued at February Term, 1886, before Justices SCUDDER
and MAGIE.

For the relators, *R. W. Dayton.*

For the defendant, *J. S. Applegate.*

The opinion of the court was delivered by

SCUDDER, J. March 10th, 1885, at the regular spring
election of Matawan township, in the county of Monmouth,
the voters of the township fixed the sum of $700 as the
amount to be assessed, collected and raised for the expenses of
working the highways within the township, according to the
statute. *Rev.*, p. 1003, § 39. Notice of the result of the
election was posted March 11th, 1885. On March 13th, the
township committee met, and, among other business transacted,
assigned and apportioned to the overseers of the highways,
respectively, their several limits and divisions of the high-
ways within the township, for opening, clearing out, working,
amending and repairing. At the same meeting the money to
be raised by taxation was apportioned to each district road
overseer.

On March 17th, part of the township of Matawan voted to
become an incorporated borough, pursuant to an act entitled
"An act for the formation of borough commissions," ap-

proved March 7th, 1882. *Pamph. L., p.* 48. This act authorizes the inhabitants of any township, or part of a township, in this state, embracing an area not exceeding two square miles and containing a population not exceeding three thousand, to become a borough commission whenever a majority of the qualified voters shall so decide at a special election to be called for that purpose. It provides for the election of seven commissioners who shall have the general supervision, management and control of the public streets, sidewalks and roads of said borough, the lighting of the streets and the supplying of water for extinguishing fires, with special powers given for these purposes.

April 7th, 1885, commissioners were elected, under section 7 of the statute, and entered on the discharge of their duties. The assessment for road tax in the township of Matawan was made and collected by the officers of the township in the usual time and manner, and the collector of the township having these funds in hand, the commissioners demanded that the sum of about $400, part of these taxes, be paid to their treasurer, and on refusal to pay, ask the mandatory writ of this court to compel such payment.

The only question raised by the parties is whether the commissioners of the borough are entitled to a portion of taxes claimed by them, or the overseer of the roads in the township shall have all the road money according to the apportionment made by the township committee on March 13th, 1885.

Although this apportionment was made on March 13th, while a notice was posted for a meeting of the inhabitants on March 17th, to decide whether there should be a borough incorporation, there is nothing shown beyond this fact to prove that the township committee were seeking an advantage by anticipating the result of such election. Friday or Saturday following the township election is the usual time for the first business meeting of the township committees in our state. Bonds and oaths of office are then presented, road districts assigned and money apportioned to the overseers of the district. As oaths of office in some cases are required to be taken

within six days after notice of election or appointment (*Rev.,* *p.* 1196, § 19,) and provision for special meetings to be called to fill vacancies in offices, for any cause (section 13) is sometimes necessary, an early meeting of the township committee has been usual. Besides this, it appears, and is admitted, that in the preceding year of 1884 there had been a like call for a special election for the purpose of becoming incorporated under the act of 1882, when the result was adverse. There was no apparent reason, therefore, for the officers of the township to change their customary action, or stop in the discharge of their duties until the result of the election was known. Having taken the legal and usual proceedings in settling and apportioning the road tax for the township highways, the question to be determined is whether the subsequent action of part of the inhabitants of the township, in separating themselves from the others and establishing a borough commission, annuls the act of the township committee in dividing the township into road districts and apportioning the money to be raised for road purposes to the several districts.

The legislative power to make changes in townships, dividing them for municipal purposes, cannot be doubted. This act is general in its application to all the townships of the state, and is not within the constitutional prohibition of passing private, local or special laws, regulating the internal affairs of town and counties. Neither is the act of the township committee, in apportioning money to the several road districts, a contract with the road districts, or their respective overseers, which cannot be impaired by subsequent legislation; it is merely a convenient form of providing funds for a special purpose, by legislative authority, governed entirely by the terms of the act giving the power, which may be at any time changed or repealed at the will of the legislature. The remedy for any loss or inconvenience caused by such change or repeal must be sought from that body. That the legislature may, independent of any constitutional prohibition, incorporate towns or villages within townships, for special or limited purposes, without separating the territory within the

prescribed limits from the rest of the township in other respects, has been recognized in our courts. *State, Pancoast, pros.,* v. *Troth,* 5 *Vroom* 377.

We must look, therefore, to the words of the act to learn what powers the legislature intended to confer on this new corporation within the limits of the larger township corporation, and how far it will supersede the prior forms of govern-. ing the entire township. If the whole township had been incorporated as a borough commission there would be little conflict or embarrassment in adjusting the rights and duties of the borough and township officers, but as a part only has been set off, a serious difficulty has arisen. The borough commissioners are unwilling that the township overseers of highways shall receive and expend the taxes assessed for roads on the taxable inhabitants in the borough. The act by which they were incorporated, read in connection with the general laws relating to townships, must govern these opposing interests.

Section 10 of the act of 1882 defines the limitation of powers, the source and application of taxes raised for road purposes applicable to this case, in these words : " That the taxes which shall hereafter be assessed, levied and collected, upon and from the taxable inhabitants of said borough, and upon the real estate therein, for roads or for the improvement or repairs of roads by the officers of the township in which said borough is situate, shall not be applied to the roads without the boundaries of said borough, but that the assessor and collector of the said township shall hereafter assess and collect upon and from the taxable inhabitants of said borough, and on all lands liable to be taxed therein, the road tax which shall have been ordered to be raised at the previous annual township election, in the same manner as the same has been heretofore assessed, levied and collected, and it shall be the duty of the collector or collectors of the township to pay over the amount of the road tax by him or them received which shall have been assessed and collected upon the taxable inhabitants of said borough and upon all lands liable to be taxed therein, to the treasurer of the said

board of commissioners, to be expended and applied by them in carrying out the purposes of this act," &c.

The words "hereafter" and "heretofore," used in this section, do not refer to the date of the enactment of the statute, but to the time when the act becomes effective by the adoption of its terms in the several townships, or parts of townships, that elect to establish borough commissions.

By section 3, the clerk and the inspectors of the election shall, if a majority of votes be cast for a borough commission, "forthwith certify the result of said election, and the number of votes cast for and against, under their hands, to the clerk of the county wherein said borough is situated, to be filed in his office, and from the time of filing said certificate in the office of the clerk of the county as aforesaid, the inhabitants of the said borough shall be a borough commission in fact and in law under the name," &c.

The result of the election in this case, held March 17th, 1885, was thus certified, and the borough was, in legal effect, incorporated from that time.

Commissioners were elected on the first Tuesday of April (7th,) as designated in the act, and the sum fixed to be raised by tax for the general purposes of the act, and within the limitation, was $500. After the date of incorporation the taxes were assessed and collected at the usual times by the township assessor and collector.

It thus appears that prior to the incorporation of this borough and the election of its officers, the money voted to be raised by taxation for roads had been apportioned and appropriated to the respective road districts, and that these relators, being voters, were actors in such appropriation.

Acting not for the whole township, but for a portion of its inhabitants, who by their voluntary action, and charged with full knowledge of what had been done by the public officers, have become incorporated, they seek to keep from the road district overseers the taxes raised for them by the votes of the entire township, and set apart for them by officers representing them.

This they should not be permitted to do unless the statute includes this case and is imperative in its terms.

In *Callahan* v. *Township of Morris*, 1 *Vroom* 160, the court, after citing the sections of the statute which impose duties on the township committee and other township officers, says: "It thus becomes the duty of the committee to apportion the money raised for the highways among the several overseers, to be expended in their respective districts as the committee or a majority thereof deem expedient."

It is true that it says that such apportionment should not be made within twenty days after the order for raising the money shall be passed, because the individual taxpayers have twenty days to give written notice of their election to work out the tax; but this is for the benefit of the taxpayers who make such election, and it is not competent for others to object. The court further says: "Money may often be properly apportioned before it is in fact collected, and although the overseer is not bound to incur the expense of opening and repairing the roads by hire until he has the money in hand, yet, if he thinks proper to act upon the faith of such appropriation, he may do so. This is often done in many parts of the state without dispute or difficulty, and with a reasonable disposition to do right, such a course is generally safe and expedient."

This must often be done, because penalties are imposed on overseers of highways for neglect to perform the duties of their office, and by the statute (section 57,) working on the roads between the 1st day of October and the 1st day of April, except so far as may be necessary to make the road passable when obstructed by snow or rain (section 94,) is prohibited. As taxes are not in fact collected and available before October 1st, the overseers will often be without the means of repairing unless they have in hand money from the preceding year for road purposes. The apportionment of money to the road districts is therefore commonly made promptly to ascertain the amount for each district, and give assurance to the overseer upon which he may act in making and repairing roads.

Brown v. Mullica Township.

As the act of the township committee of Matawan was lawful when done, it fixed the right of the road overseers to this money in controversy, and the relators being themselves actors in this appropriation, by their public agents, the township committee, they are not now in a position to revoke this action. The terms of the act do not include this case, and should be construed to extend to assessments for road purposes where no previous appropriation had been made by legal authority. The *mandamus* is refused.